In re Dwight **FISHER** and Annette Fisher, Debtors.

**OKLAHOMA BRICK CORP.**, Plaintiff,

v.

Dwight **FISHER** and Annette Fisher, Defendants.

**RANDALL MECHANICAL, INC.**, Plaintiff,

v.

Dwight **FISHER** and Annette Fisher, Defendants.

**Bankruptcy No. 81–01790.
Adv. Nos. 82–0004, 81–0295.**

United States Bankruptcy Court, W. D. Oklahoma.

Sept. 7, 1982.

Gary L. Brooks, Oklahoma City, Okl., for debtors.

Harold W. Jordan, Oklahoma City, Okl., for Oklahoma Brick Corp.

Wayne Campbell, Oklahoma City, Okl., for Randall Mechanical, Inc.

## MEMORANDUM ORDER

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

This matter came on for hearing after required notice upon the consolidated complaints of Oklahoma Brick Company and Randall Mechanical, Inc., objecting to the discharge of debts owed them as within the scope of the Oklahoma Lien Trust Statutes, 42 Okla. Stat. (1981) §§ 152 and 153. After a full evidential hearing the case was taken under advisement with briefs invited.

### ISSUES

(1) Did the state foreclosure action preclude the filing of claims by plaintiffs where they failed to ask for deficiency judgments under 12 Okla. Stat. (1981) § 686. (2) Does the use of funds to pay other than lien claimants violate 42 Okla. Stat. (1981) §§ 152 and 153. (3) Does the signature of the debtor Annette Fisher upon the construction loan mortgage and the real estate deed, impose individual and personal liability under the Oklahoma Lien Trust Statutes.

### FACTS

Dwight Fisher was a residential building contractor in the Oklahoma City area. Mrs. Fisher kept the books of Mr. Fisher's business and she would write out checks he requested and directed. Occasionally she would sign checks. Additionally, Mr. Fisher paid Mrs. Fisher for work she would do in preparing the houses for sale including decorating and cleaning.

On October 16, 1980 the debtor purchased a lot from Greenbriar Management Corporation for the purpose of constructing a home on the site. On the same day, the debtor executed a mortgage with Mutual Federal Savings and Loan Association (herein Mutual Federal) for a $66,000.00 construction loan. Both debtors signed the mortgage and both took title to the land.

Thereupon Mr. Fisher started the construction of a house on Lot 12, Block 17 of Section 4. Greenbriar Kingspark to an addition to Oklahoma City, Cleveland County, Oklahoma.

Three advances totalling $49,685.50 were made to Mr. Fisher: (1) $8,314.50 on November 3, 1980; (2) $23,335.00 on December 11, 1980; (3) $18,036.00 on January 15, 1981.

Mr. Fisher's own records indicate that not all the funds received by him were used to pay the actual expenses of the house.

Mutual Federal required $4,126.00 for interest payments on other notes owed by Mr. Fisher as a condition of allowing the second draw. And Mutual Federal refused to permit the final draw because it felt impaired. Concededly $24,383.41 was spent on the instant property. The plaintiffs question other expenditures of $20,449.41 made from the date of Mutual Federal's first advance.

On April 29, 1981 Mutual Federal filed a petition for foreclosure on this property and on May 18, 1981 filed an amended petition adding additional parties. On June 10, 1981 a second amended petition was filed adding further parties.

### LAW

#### Federal Statute

11 U.S.C. § 523(a)(4) makes a debt nondischargeable "for fraud or defalcation while acting in a fiduciary capacity ..."

*State Lien Trust Statutes*

42 Okla. Stat. (1981) § 152 states in part:

"... (2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due or owing by such mortgagor by reason of such building or remodeling contract."

42 Okla. Stat. (1981) § 153(1) provides:

"Such trust funds shall be applied to the payment of said lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing have been paid."

12 Okla. Stat. (1981) § 686 states in part:

"In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgment or judgments shall be rendered for the amounts due as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise, with interest thereon, and for sale of the property charged and the application of the proceeds; or such application may be reserved for the future order of the court ... Notwithstanding the above provisions no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this Act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enforce a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action ... If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist."

CONCLUSION

▮ A fiduciary relationship was imposed upon the fund transfer to the debtor at the time such funds were received from Mutual Federal. *Carey Lumber Co. v. Bell,* 615 F.2d 370 (C.A. 5 1980). Since such trust relationship was created prior to the foreclosure suit and the state statute mandated that no trust funds could be improperly disbursed to others except lien claimants (Sec. 152, supra) nondischargeable debts were created and remained unaffected by the subsequent foreclosure. Specifically, the complainants had no burden to seek deficiency judgments under section § 686, supra, within the 90 day statutory provision. Under section 153(1), supra, it was imperative that the funds only be disbursed to lien claimants or a trust violation immediately arose.

▮ Although Mrs. Fisher was a party to the real estate mortgage the funds disbursement herein did not give rise to nondischargeable debts as to her. The thrust of nondischargeability is in the nature of conversion or misapplication of trust or fiducial funds and she individually was not a responsible party as to such misappropriation. In reality Mrs. Fisher was an accommodation signatory to the mortgage. Mutual Federal was merely protecting itself against possible spouse claims although dealing with a sole proprietorship. Read 84 Okla. Stat. (1981) §§ 44, 213. Compare 84 Okla. Stat. (1981) § 41.

Accordingly, it is hereby ORDERED and ADJUDGED that:

1) Randall Mechanical, Inc. be given judgment for $5,875.00 against debtor Dwight Fisher; and Oklahoma Brick Company is given judgment for $1,823.28 against debtor Dwight Fisher.

2) The judgments granted against debtor Dwight Fisher are nondischargeable.

3) The debts, if any, owed by debtor Annette Fisher are dischargeable.

4) Execution upon the judgments against debtor Dwight Fisher (or a payment plan

made as to such nondischargeable obligations) are stayed for thirty days from date to enable the trustee (or debtor) to determine and file actions to recover estate funds or setoffs, if appropriate.